IN THE UNTIED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

LOTTE INSURANCE CO. LTD., as Subrogee of
its insured, LOTTE GLOBAL LOGISTICS CO., LTD.,

      Plaintiff,

v.                                                                                                  Civil Action No. _____

R. E. SMITH ENTERPRISES, INC.,
d/b/a SMITH SPECIALIZED LOGISTICS,
a Texas corporation,

SERVE:         Ronnie Smith, Registered Agent
                    21514 Avalon Queen Drive
                    Houston, TX 77379,

D N K WAREHOUSING & TRUCKING LLC,
a Virginia limited liability company,

SERVE:         Dean E. Archer, Registered Agent
                      402 Sheepshead Lane
                    Virginia Beach, VA 23452,

TRINITY LOGISTICS LLC,
a Virginia limited liability company,

SERVE:         Dean E. Archer, Registered Agent
                      402 Sheepshead Lane
                    Virginia Beach, VA 23452,

and

G STREET & ASSOCIATES, LLC,
a Virginia limited liability company,

SERVE:         Ralph English, Registered Agent
                      612 Wildey Road
                    Seaford, VA 23696

      Defendants.

## **COMPLAINT**

Plaintiff Lotte Insurance Co. Ltd., as Subrogee of its insured, Lotte Global Logistics Co., Ltd.

("Plaintiff" or "Lotte"), by counsel, moves this Court for judgment against the Defendants, R. E.

Smith Enterprises, Inc. d/b/a Smith Specialized Logistics, ("Smith"), D N K Warehousing & Trucking LLC ("DNK"), and Trinity Logistics LLC, ("Trinity"), and G Street Associates, LLC ("G Street" and collectively with Smith and DNK and Trinity, "Defendants"), for negligence, bailment and breach of contract for the failure to safely handle, care for, and deliver certain commercial property, namely 300 packages of large capacity lithium-ion batteries, and in support thereof, respectfully states as follows:

## Introduction

1.  This matter arises out of damage to batteries that had been delivered from Virginia International Gateway (VIG), a local marine terminal, to DNK and Trinity for bonded storage until they could be transferred from their ocean-going containers to containers in which they would be transported overland to their final destination of Edmonton, Alberta, Canada. While stored in the bonded warehouse, an exterior wall fell in and the batteries were damaged beyond repair by crushing and water intrusion. The sensitive and dangerous nature of the goods required the entire consignment to be destroyed. Plaintiff's losses exceed $543,180 for which Plaintiff now seeks restitution.

## Parties

2.  Lotte, is now, and at all relevant times has been, a corporation organized and existing under the laws of South Korea with its principal place of business located at 3 Sowol-ro, Jung-gu, Seoul 100-778 South Korea. Lotte is the subrogated interest holder for the party who contracted to deliver the goods to the buyer on behalf of the seller.

3.  Smith operated under the trading name of Smith Specialized Logistics when the events giving rise to this suit occurred. Smith is a Texas corporation with its principal place of business located at 33211 Live Oak Park, Magnolia, Texas 77354. Smith is a logistics and freight company offering to the public turnkey transportation solutions.

4. DNK and Trinity are now, and at all times relevant to this controversy have been, limited liability companies under common ownership, organized and existing under the laws of the Commonwealth of Virginia, with both principal places of business located at 905 G Street, Hampton, Virginia 23661 from which it operates a storage warehouse (the "Warehouse"). Trinity handles logistical support for the Warehouse leased and operated by DNK.

5. G Street is a limited liability company organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business located at 612 Wildey Road, Seaford, Virginia 23696. G Street is the owner of the Warehouse.

Jurisdiction and Venue

6. Subject Matter Jurisdiction is appropriate under 28 U.S.C. 1332(a) because Plaintiff is a corporate citizen of a foreign state and the Defendants are citizens of different States, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7. Personal Jurisdiction over Defendants DNK, Trinity, and G Street is appropriate because each is domiciled in Virginia.

8. Personal Jurisdiction over Defendant Smith is appropriate under the Virginia Code § 8.01-328.1(A)(1) & (2) & (3), and conforms to due process and notions of fair play and substantial justice, in that Smith conducted transportation business activities in Virginia, availing itself of the privileges of doing business in that state, and Plaintiff's claims arise from Defendant Smith's transportation business activities in Virginia.

9. Because a substantial part of the events or omissions giving rise to the claim occurred in Hampton, Virginia, and Defendants' property that is the subject of the action is situated in Hampton, Virginia, venue is appropriate in this Court pursuant to 28 U.S.C. 1391(b)(2).

The Facts

10. On or about November 21, 2021, Plaintiff's container of 300 packages of large capacity cell (94Ah or more) lithium-ion batteries (the "Batteries") arrived at VIG on a forwarder bill of lading with Norfolk, Virginia as the only destination given. A true and accurate copy of the forwarder bill is attached hereto as **Exhibit A**.

11. In a series of emails exchanged on or about December 3, 2021, Smith contracted with Lotte to deliver the Batteries to a buyer in Edmonton, Alberta Canada.[1] After receiving shipping documents and the contract of carriage, Smith was to receive the Batteries from VIG, transload the Batteries from its ocean-going container, return the container to the ocean carrier, and transport the Batteries according to the rules and regulations for lithium-ion batteries, which carry a known risk of ignition. Because the destination was in Canada, these procedures also needed to occur from a bonded warehouse.

12. Smith selected the Warehouse in Hampton, Virginia, known in the transportation industry as "Trinity Logistics / DNK Warehouse." Smith subcontracted with Trinity and DNK on behalf of Lotte for the safe handling, transloading, storage, and redelivery of the Batteries.

13. At all relevant times, DNK and Trinity leased the Warehouse from G Street. The Warehouse proved to be not fit for the purpose for which G Street leased the premises and for which DNK and Trinity held themselves out to the public.

14. Between December 8 through 11, 2021, the Batteries entered the Warehouse in good order and condition, and were accepted as such.

---

[1] Smith contracted to retrieve, strip, load and deliver four shipping containers of batteries; only one was damaged as a result of the collapsing of a wall in the Warehouse.

15. While in DNK's and Trinity's exclusive custody and control, the Batteries were removed from the ocean-going container and stored in the Warehouse in anticipation of loading into another container in preparation for in-land transportation.

16. On or after December 12, 2021, while in DNK's and Trinity's exclusive custody and control, the Batteries suffered physical and wetness damage. An outer wall of the building collapsed, a water pipe burst, and the other warehouse walls were so compromised that the building was condemned, delaying the inspection of the Batteries.

17. In addition to the physical and water damage, the Batteries were exposed to temperature and humidity incommensurate with safety regulations and business custom for the care and custody of lithium-ion batteries.

18. On April 18, 2022, the Batteries underwent a preliminary survey. Visual inspection revealed some Batteries had been crushed, with packaging evincing growth of black mold, from water that had breached the packaging to reach the Batteries' casings and interior.

19. The Batteries were returned to the manufacturer in South Korea for thorough inspection and testing by Samsung SDI / KORHI / International Adjusters & Surveyors ("Samsung"). The manufacturer's technical examination found irreversible damage to battery cells and corrosion of aluminum welds.

20. The product management regulations for medium and large-sized lithium-ion batteries require that all impacted battery products be destroyed. In addition, every module was likely defective due to prolonged exposure to temperatures and humidity that exceed the regulations and cannot be repaired back to normal. All of the Batteries in the consignment had been rendered unmerchantable and dangerous if used.

21. Samsung determined that the shipment was a total loss and the Batteries were destroyed. A true and accurate copy of the certificate of destruction and subrogation of interest is hereby attached hereto as **Exhibit B**. The commercial value of the Batteries was approximately $493,800.00, and the cost of transportation and inspection and disposal was approximately $49,380, for a total of approximately $543,180.

## COUNT I – BREACH OF CONTRACT AND CARMACK LIABILITY BY SMITH

22. Paragraphs 1 through 21 are hereby incorporated.

23. Smith entered into a contract with Lotte to receive, store, care, and transport the Batteries safely to the buyer under industry standard terms, express and implied, for the international shipment of a class 9 hazardous material through bonded agents in exchange for compensation received. However, Smith failed to issue a bill of lading.

24. Smith breached its contract with Plaintiff by failing to hire a reasonably safe warehouse for the storage and transloading of the Batteries.

25. Smith breached its contract with Plaintiff by failing to ensure the Batteries were inspected and cared for after the incident.

26. Smith breached its contract with Plaintiff by failing to ultimately tender the Batteries in good condition.

27. As a result on Smith's breach the Batteries were unmerchantable and caused Lotte to suffer damages in the amount of approximately $543,180.

## COUNT II – BREACH OF CONTRACT AND CARMACK LIABILITY BY DNK/TRINITY

28. Paragraphs 1 through 27 are hereby incorporated.

29. DNK and Trinity held themselves out as merchants with a bonded warehouse capable and suitable for storing goods indoors in dry facility protected from the weather, and contracted with Lotte to receive, store and handle the Batteries, and received compensation for the same.

30. DNK and Trinity breached the contract by failing to store the Batteries in a place that was suitable, which damage them; and for failing to inspect, document, and notify all interested parties in a timely and accurate manner, which further damaged the Batteries.

31. DNK's and Trinity's breaches caused the Batteries to be unmerchantable and caused Lotte to suffer damages in the amount of approximately $543,180.

### COUNT III – BAILMENT - SMITH

32. Paragraphs 1 through 21 are hereby incorporated.

33. The Batteries were surrendered to Smith or Smith's agent at VIG and taken to and stored in the Warehouse Smith selected. By selecting the Warehouse and directing the retrieval of the Batteries from VIG, Smith exercised control over the Batteries, acknowledged possession and agreement to deliver them to Consignees in Canada, and thereby created a bailee-bailor relationship while the Batteries were stored in DNK's Warehouse.

34. Smith owed a duty of reasonable care as bailee for hire in receiving, handling, and storage of goods while in the DNK's and Trinity's exclusive, lawful possession.

35. Smith, through its agents, failed to safely care for and deliver the Batteries in good order and condition to Lotte, because delivery was in wet and damaged condition.

36. As a proximate cause of Smith's breach of its Bailment duties, Lotte suffered damages in the amount of approximately $543,180.

### COUNT IV – BAILMENT - DNK/TRINITY

37. Paragraphs 1 through 21 are hereby incorporated.

38. DNK and Trinity received the Batteries, exercised lawful possession over them, stored them for hire, and agreed to redeliver them, thereby acting as agent-bailees and warehousemen towards the Batteries.

39. DNK and Trinity owed a duty of reasonable care as bailees or agent-bailees for hire in receiving, handling, and storage of the Batteries while in DNK's and Trinity's exclusive, lawful possession.

40. As bailees, DNK and Trinity failed to safely care for and deliver the Batteries in the same good order and condition to Lotte as DNK and Trinity received them, redelivering them in wet and damaged condition.

41. As a proximate cause of DNK's and Trinity's breaches of their duties as bailees, Lotte suffered damages in the amount of approximately $543,180.

<u>COUNT V – BAILMENT - G STREET</u>

42. Paragraphs 1 through 41 are hereby incorporated.

43. G Street owned the Warehouse where the Batteries were damaged, and leased the property for the purpose of warehousing.

44. Although G Street leased the property to DNK, it retained responsibility over the maintenance of the structure.

45. G Street knew that DNK used the property as a warehouse and owed a duty of reasonable care as bailee for hire in providing a suitable building for the storage of goods, including such Batteries, while in DNK's and Trinity's exclusive, lawful possession.

46. G Street, breached its bailment duty by failing to maintain the building in which the Batteries were stored. Such failure caused the building to become structurally unsound, leading to damage when a wall fell down on and around the Batteries and allowed water to leak onto the Batteries through the roof or from a bursting pipe.

47. G Street failed to safely care for and deliver the Batteries in good order and condition to Lotte.

48. As a proximate cause of G Street's breach of its Bailment duties, Lotte suffered damages in the amount of approximately $543,180.

## COUNT VI – NEGLIGENCE - SMITH

49. Paragraphs 1 through 21 are hereby incorporated.

50. Smith owed a duty of reasonable care in the transportation of the Batteries, which it breached by negligently hiring DNK to store the Batteries without exercising due diligence to determine whether the Warehouse was suitable for storing lithium-ion batteries.

51. Smith breached its duty of reasonable care by negligently entrusting 300 large capacity lithium-ion batteries, a class 9 hazardous material which carries a known risk of ignition, and which must be destroyed in the event of damage, to DNK and Trinity for storage at the Warehouse owned by G Street.

52. By its negligent acts and omissions, Smith is liable for the damage to the Batteries sustained at the Warehouse and in transport to Plaintiff.

## COUNT VI – NEGLIGENCE - DNK/TRINITY

53. Paragraphs 1 through 21 are hereby incorporated.

54. Defendants DNK and Trinity owed a duty of care to the public because they held themselves out as providers of transportation and warehousing services suitable for transloading and storing class 9 hazardous materials such as the Batteries.

55. DNK and Trinity breached their duty of care by failing to maintain the property and that negligence caused the Batteries under their care and control to be damaged, as evinced by impact damage, mold growing on the packaging, and wet condition of the Batteries.

56. Defendants DNK and Trinity further breached a duty of care after the initial water damage by failing to timely and accurately notify other interested parties of the casualty, leaving

the Batteries in wet and broken packaging, and/or causing more and different damage in removing the Batteries from the condemned Warehouse.

57. Through their acts and omissions, DNK and Trinity negligently damaged the Batteries and are liable to Lotte for the damage to the Batteries stored at their Warehouse.

## COUNT VII – NEGLIGENCE OF G STREET

58. Paragraphs 1 through 21 are hereby incorporated.

59. As the owner of the Warehouse, G Street owed a duty of care as to the property stored in its Warehouse which it leased for the purpose of warehousing.

60. Although G Street leased the property to DNK, it retained responsibility over the maintenance of the structure and was the party best positioned to prevent defects from damaging the property of its business invitees.

61. G Street, breached its duty by failing to maintain the building in which the Batteries were stored, causing them to be damaged when a wall fell down on and around them which allowed water to leak through the roof or from a bursting pipe onto the Batteries.

62. As a proximate cause of G Street's negligence, Lotte suffered damages in the amount of approximately $543,180.

**WHEREFORE**, Plaintiff, Lotte Insurance Co. Ltd., as Subrogee of its insured, Lotte Global Logistics Co., Ltd., asks this Court to enter judgment against defendants, R. E. Smith Enterprises, Inc. d/b/a Smith Specialized Logistics, D N K Warehousing & Trucking LLC, Trinity Logistics LLC, and G Street & Associates LLC, in the principal amount of $543,180, plus prejudgment interest and any such further relief as the Court deems just and proper.

                **LOTTE INSURANCE CO. LTD., as Subrogee of its insured, LOTTE GLOBAL LOGISTICS CO., LTD.**

By    /s/ *Patrick M. Brogan*
        Patrick M. Brogan (VSB No. 25568)
        KAUFMAN & CANOLES, P.C.
        150 W. Main Street, Suite 2100
        Norfolk, VA 23510
        T: (757) 624-3000
        F: (888) 360-9092
        pmbrogan@kaufcan.com
        *Counsel for Plaintiff*