UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

LOTTE INSURANCE CO. LTD., as
Subrogee of its insured, LOTTE
GLOBAL LOGISTICS CO., LTD.,

        Plaintiff,

v.                                          Civil No. 4:23cv153

R.E. SMITH ENTERPRISES, INC.,
d/b/a    SMITH    SPECIALIZED
LOGISTICS,    a         Texas
corporation,

DNK   WAREHOUSING   &   TRUCKING
LLC,    a    Virginia    limited
liability company,

TRINITY    LOGISTICS    LLC,    a
Virginia    limited    liability
company,

and

G STREET & ASSOCIATES, LLC,
a  Virginia  limited  liability
company,

        Defendants.

## OPINION AND ORDER

This matter is before the Court on two motions to dismiss
filed by Defendants R.E. Smith Enterprises, Inc. ("Smith"), ECF
No. 19, and G Street & Associates ("G Street"), ECF No. 21,
respectively. Because the facts and legal questions are
adequately presented in the motions and subsequent briefs, and

oral argument would not aid in the decisional process, the Court finds that a hearing is unnecessary.[1]  For the reasons explained herein, the Court **GRANTS** Smith's motion to dismiss (ECF No. 19) and **GRANTS** G Street's motion to dismiss (ECF No. 21).

## I. FACTUAL AND PROCEDURAL BACKGROUND

As alleged in Plaintiff Lotte Insurance Co. Ltd.'s ("Plaintiff") Complaint and attached exhibits, in October of 2021, Samsung SDI Co., Ltd. ("Samsung") shipped a container of 300 packages of large capacity cell lithium-ion batteries (the "Batteries") from South Korea, Samsung's country of incorporation.[2]  ECF No. 1-1, at 4.  Travelling overseas on the vessel "Cosco Shipping Lotus," the Batteries were ultimately destined for a buyer in Alberta, Canada, but first arrived on November 21, 2021, at Virginia International Gateway ("VIG"), a container terminal in Portsmouth, Virginia.  ECF No. 1, at 4.  Plaintiff alleges that in December of 2021, Lotte Global Logistics Co., Ltd. ("Lotte") contracted with Defendant Smith, a logistics business, to deliver the Batteries overland to the Canadian buyer.  Id.  According to a series of emails exchanged between Lotte and Smith around December 3, 2021, Smith was to

---

[1] The Court received the parties' joint "Request for Hearing," ECF No. 30, but determined that the issues were adequately presented in the briefs before the Court.

[2] Lotte Insurance Co. Ltd., as subrogee of its insured, Lotte Global Logistics Co., Ltd. ("Lotte"), has brought the instant suit as Plaintiff. ECF No. 1, at 1.

receive the Batteries from VIG, transload the Batteries from their ocean-going container, and then transport the Batteries to their Canadian buyer consistent with the applicable safety rules and regulations for shipping flammable lithium-ion batteries.[3] Id. Because the ultimate destination for the Batteries was outside of the United States, the foregoing procedures "needed to occur from a bonded warehouse."[4] Id. Smith therefore selected the nearby "Trinity Logistics/DNK Warehouse" ("Warehouse"), located in Hampton, Virginia, and subcontracted with Defendants Trinity Logistics LLC ("Trinity") and DNK Warehousing & Trucking LLC ("DNK") on behalf of Lotte for the "safe handling, transloading, storage, and redelivery of the Batteries." Id. Accordingly, between December 8th and 11th, the Batteries entered the Warehouse in "good order and condition, and were accepted as such." Id. Plaintiff alleges that, at all "relevant times," Trinity and DNK leased the Warehouse from its owner, G Street, another named Defendant. Id.

---

[3] "Transloading" is a term of art in the bulk transportation industry. It means "[t]ransferring bulk shipments from the vehicle/container of one mode to that of another at 'a terminal interchange point." U.S. Dep't of Transp., Fed. Highway Admin., Freight Prof'l Dev. Prog., Freight Glossary, http://ops.fhwa.dot.gov/freight/FPD/glossary/index.htm (last visited April 17, 2024).

[4] According to U.S. Customs and Border Protection, a "bonded warehouse" is "a building or other secured area in which imported dutiable merchandise may be stored, manipulated, or undergo manufacturing operations without payment of duty for up to 5 years from the date of importation." U.S. Customs and Border Protection, Bonded Warehouse, https://www.cbp.gov/sites/default/files/documents/bonded_20wh2_2.pdf.

While temporarily stored in the Warehouse, the Batteries were allegedly under DNK's and Trinity's "exclusive custody and control," and were scheduled to be transferred to a different container appropriate for ground transportation to Canada.  Id. at 5.  However, around December 12, 2021, Plaintiff alleges that the Batteries, while still "in DNK's and Trinity's exclusive custody and control," suffered "physical and wetness damage" due to both the collapse of the Warehouse's outer wall and the water discharged from a burst pipe.[5]  Id.  Indeed, Plaintiff alleges that the Warehouse walls were so compromised that the building was eventually condemned by local authorities, delaying the inspection of the Batteries.  Id.

On April 18, 2022, the Batteries underwent a preliminary survey.  Plaintiff alleges that visual inspection revealed that some of the Batteries had been crushed, their packaging now evincing growth of black mold from water damage.  Id.  As a result, the Batteries were returned to their manufacturer in South Korea for further inspection and testing by Samsung.  Id.  Samsung's technical inspection allegedly found irreversible damage to the battery cells, rendering all of the Batteries in the consignment "unmerchantable and dangerous if used."  Id.

---

[5] In addition to the above-described damage, the Batteries were allegedly exposed to temperature and humidity levels inconsistent with safety regulations and business custom for the care and custody of lithium-ion batteries.  ECF No. 1, at 5.

Samsung therefore determined that the shipment was a "total loss," and the Batteries were destroyed.  Id. at 6.  The commercial value of the Batteries, by Plaintiff's calculation, was approximately $493,800, and the cost of transportation, inspection, and disposal was approximately $49,380, producing a total loss of approximately $543,180.  Id.

As a result of the damage sustained and the associated expenses, Plaintiff filed its Complaint in this Court on December 11, 2023, ECF No. 1, asserting seven counts against Defendants Smith, DNK, Trinity, and G Street.  Two months later, Smith filed an Answer as to Count I (Breach of Contract), ECF No. 20, and a Motion to Dismiss Counts III (Bailment) and VI (Negligence), ECF No. 19.  On February 20, 2024, G Street filed a Motion to Dismiss the two claims asserted against it, Counts V (Bailment) and VII (Negligence).  ECF No. 21.  The next week, on February 26, 2024, the Clerk of Court filed an "Entry of Default" against DNK and Trinity.  ECF No. 25.  Smith and G Street's respective motions to dismiss are now fully briefed and ripe for review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a cause of action based on the plaintiff's failure to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure

8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Fair notice is provided by setting forth enough facts to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 570.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility" that a defendant is liable.  Id. (quoting Twombly, 550 U.S. at 556).  Moreover, neither "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," nor "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" suffice to meet the plausibility requirement.  Id.  (citing Twombly, 550 U.S. at 555).

Because a motion to dismiss tests the sufficiency of a complaint without resolving factual disputes, a district court

6

"'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" <u>Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.</u>, 684 F.3d 462, 467 (4th Cir. 2012) (quoting <u>E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.</u>, 637 F.3d 435, 440 (4th Cir. 2011)). Although the truth of the facts alleged is presumed, district courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." <u>E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship</u>, 213 F.3d 175, 180 (4th Cir. 2000).

### III. DISCUSSION

Defendants Smith and G Street both contend that, with respect to Plaintiff's bailment and negligence causes of action asserted against each of them, Plaintiff has failed to plead sufficient facts to state a claim upon which relief can be granted. The Court will first address Smith's motion to dismiss and then will turn to G Street's motion.

### A. Smith's Motion to Dismiss

Smith argues that this Court should dismiss Count III, a bailment claim, and Count VI, a negligence claim, because each count asserts a claim under state common-law that is preempted by

7

federal law.[6]  ECF No. 23, at 2-4.  In Smith's view, Plaintiff's state law claims, when asserted against Smith in its capacity as an interstate motor carrier and/or property broker, are preempted by either the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 14501, or the Carmack Amendment to the Interstate Commerce Act of 1887, 49 U.S.C. § 14706.  Id. at 8. Plaintiff opposes Smith's motion on various grounds, principally arguing that its state law claims are not preempted because they are asserted against Smith in its capacity as a broker, a classification that purportedly avoids preemption.  ECF No. 26, at 2.  The Court first addresses the legal sufficiency of Count VI, negligence, and then turns to Count III, bailment.

### 1. Count VI - Negligence

By way of legal background, the doctrine of preemption derives from the Supremacy Clause of the United States Constitution, which establishes that federal law is the "supreme law of the land."  U.S. Const. Art. VI.  Pursuant to the superior status of federal law, the doctrine of preemption provides that "state law that conflicts with federal law is 'without effect.'" Wash. Gas Light Co. v. Prince George's Cty. Council, 711 F.3d 412, 419 (4th Cir. 2013) (quoting Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992)).  As is relevant here, express

---

[6] More specifically, Count VI sets forth a negligent hiring claim, alleging that Smith owed a duty of reasonable care in the transportation of the Batteries that was breached when Smith negligently hired DNK and Trinity.  ECF No. 1, at 9.

preemption occurs when the United States Congress includes a preemption clause in a federal statute, thereby expressly declaring its intention for pertinent state law to be preempted. Id. Congress did just that when it passed the ICCTA, 49 U.S.C. § 10101 et seq. Enacted in 1995, the ICCTA includes a broad preemption clause that reads:

> [A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). Importantly, a state common-law claim against a carrier or broker that is related to price, route, or service amounts to an "other provision having the force and effect of law" and thus is preempted by the ICCTA. Id.; see Northwest, Inc. v. Ginsberg, 572 U.S. 273, 281 (2014) (concluding that "state common-law rules fall comfortably within the language of the Airline Deregulation Act (ADA) pre-emption provision," a preemption provision nearly identical to the ICCTA's preemption clause); see also AIG Eur. Ltd. v. General Sys., No. 13cv0216, 2014 U.S. Dist. LEXIS 99152, at *10 (D. Md. July 22, 2014) ("[A] state common law claim amounts to an 'other provision having the force and effect of law' under the [ICCTA]." (quoting 49 U.S.C. § 14501(c)(1))). However, if the connection between the state common-law claim and the entity's prices, routes, and

9

services is "tenuous, remote, or peripheral," then the state law claim is not preempted.   Morales v. Trans World Airlines, 504 U.S. 374, 390 (1992).

In addition to the ICCTA's express preemption clause, the federal preemption regime covering claims against interstate transportation entities also includes the Carmack Amendment to the Interstate Commerce Act of 1887, 49 U.S.C. § 14706. Initially enacted in 1906, the Carmack Amendment creates "a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading." Shao v. Link Cargo (Taiwan) Ltd., 986 F.2d 700, 704 (4th Cir. 1993). Under the Carmack Amendment, a carrier is "liable 'for the actual loss or injury to the property' it transports." Ward v. Allied Van Lines, Inc., 231 F.3d 135, 138 (4th Cir. 2000) (quoting 49 U.S.C. § 14706(a)(1) (1997)).

To implement its framework for carrier liability across the country, the Carmack Amendment completely preempts state law claims for damages to goods caused by an interstate carrier.   5K Logistics, Inc. v. Daily Exp., Inc., 659 F.3d 331, 335 (4th Cir. 2011); Nachman v. Seaford Transfer. Inc., No. 4:18cv62, 2018 U.S. Dist. LEXIS 149315, at *5 (E.D. Va. Aug. 31, 2018).   The distinction between a motor "carrier" and a "broker" is therefore significant for a district court addressing Carmack Amendment preemption; while the Carmack Amendment clearly preempts state

common-law claims against carriers, the preemptive force of the statute is "less settled with respect to state law claims made against brokers." AIG Eur. Ltd., 2014 U.S. Dist. LEXIS 99152, at *14; compare Atlas Aerospace LLC v. Advanced Transp., Inc., No. JWL-12-1200, 2013 WL 1767943, at *2-3 (D. Kan. Apr. 24, 2013) (finding that a breach of contract claim against a broker is not preempted by the Carmack Amendment), with Ameriswiss Tech., LLC v. Midway Line of Illinois, Inc., 888 F. Supp. 2d 197, 203-04 (D.N.H. 2012) (holding that a negligence claim against the defendant-broker was preempted by Carmack Amendment). While the issue of broker preemption is unresolved in the Fourth Circuit, in 5K Logistics, the Fourth Circuit did offer instructive dicta suggesting that a breach of contract action "is not preempted by the Carmack Amendment inasmuch as [the plaintiff] is a broker, not a carrier." 5K Logistics, Inc., 659 F.3d at 338. At least one district court in this Circuit has interpreted this statement to suggest that, in the Fourth Circuit's view, "the Carmack Amendment does not preempt all state claims against brokers." AIG Eur. Ltd., 2014 U.S. Dist. LEXIS 99152, at *15.

Invoking the preceding federal preemption regime, Smith argues that Plaintiff's claims for bailment and negligence, as state common-law claims, are preempted by the ICCTA or the Carmack Amendment regardless of whether Smith is ultimately determined to be a carrier or broker. ECF No. 23, at 8.

Plaintiff first responds by pointing out that Smith, in its Answer to Plaintiff's breach of contract claim (Count I), denies entering into a contract with Lotte, which Plaintiff leverages to argue that, without a contractual relationship, Smith is neither a carrier nor a broker, but simply a third party. In Plaintiff's view, state law claims against third parties are not preempted by federal law. ECF No. 26, at 6. Furthermore, Plaintiff maintains that its claims should not be dismissed at this time because Smith may, post-discovery, be determined to be a broker, and Plaintiff's state law claims are not preempted if they are directed against a broker. Id. at 8.

### a. Relevance of Contract Dispute

The Court first addresses Plaintiff's preliminary contention that its state law claims should survive Smith's motion to dismiss because the Court, before ruling on Smith's motion, must first determine whether a contract existed between the two parties, which requires Plaintiff's state law claims to proceed to discovery. ECF No. 26, at 6. Expanding on this argument, Plaintiff asserts that "[i]f Smith did not contract to transport or arrange for transportation of this Cargo, then neither the Carmack Amendment nor the ICCTA apply" because Smith would be a "third party" rather than a broker or motor carrier. Id. But Plaintiff fails to cite any authority for this proposition. And Plaintiff fails to demonstrate how the claimed absence of a

12

contract is relevant to the Court's resolution of Smith's motion to dismiss, which contends that Plaintiff's <u>non-contract-based</u> state common-law claims are preempted by federal law.[7]   <u>Id.</u> Indeed, myriad district courts have granted motions to dismiss negligence and bailment claims due to ICCTA and/or Carmack preemption without first addressing whether a contract was formed.   <u>See, e.g.</u>, <u>AIG Eur. Ltd.</u>, 2014 U.S. Dist. LEXIS 99152, at *9; <u>Siaci Saint Honore v. WV Maersk Kowloon</u>, No. 21cv03909, 2022 U.S. Dist. LEXIS 207436, at *32 (D.N.J. Nov. 14, 2022).

In sum, to the extent that Plaintiff is arguing that the resolution of Smith's motion to dismiss should be postponed until the Court determines whether there was a contract between the parties, that unsupported argument is rejected.[8]   The Court therefore proceeds to address the gravamen of the parties' dispute over Count VI: whether this state-law tort claim is preempted by the ICCTA and/or the Carmack Amendment.   To resolve

---

[7] Smith's motion to dismiss challenges Plaintiff's Count III (Bailment) and Count VI (Negligence), two state common-law claims.   Moreover, Plaintiff's negligence claim indisputably sounds in tort law, which by definition establishes claims of "civil wrong or injury . . . <u>not involving a breach of contract</u>."   <u>Atl. Specialty Ins. Co. v. Bindea</u>, 656 F. Supp. 3d 624, 639 (W.D. Va. 2023) (emphasis added); <u>see</u> <u>Tingler v. Graystone Homes, Inc.</u>, 298 Va. 63, 80, 834 S.E.2d 244, 253 (2019).

[8] Plaintiff has alleged in its Complaint that "Smith contracted with Lotte to deliver the Batteries to a buyer in Edmonton," and fails to explain why Smith's general denials of contractual liability in its Answer to Plaintiff's Count I — a Count alleging breach of contract that is <u>not</u> the subject of Defendant's motion to dismiss — are relevant to the Court's resolution of Defendant's motion to dismiss Counts III and VI.   ECF No. 20.

this issue, the Court must briefly address Smith's status as a broker or carrier.

**b. Smith's Status as Broker or Carrier and Carmack Preemption**

Plaintiff acknowledges that its "complaint alleges that Smith is liable as a Motor Carrier ('Carrier'), or alternatively, a Freight Broker ('Broker')."[9] ECF No. 26, at 2. At this pre-discovery stage in the proceedings, it would be premature for the Court to conclusively resolve Smith's classification because the "carrier/broker inquiry is inherently fact-intensive and not well suited to summary judgment," let alone to a motion to dismiss. Nipponkoa Ins. Co. v. C.H. Robinson Worldwide, Inc., No. 09 Civ. 2365, 2011 U.S. Dist. LEXIS 17752, at *14 (S.D.N.Y. Feb. 18, 2011). The Court thus declines to rule on Smith's classification at this juncture.

While the Court will not determine at this stage whether Smith is a carrier or broker for purposes of federal preemption, the parties do agree that if Smith is found to be a carrier of the Batteries, then Plaintiff's state law claims are preempted by the Carmack Amendment and must be dismissed.[10] ECF No. 26, at 2. Conversely, if Smith is found to be a broker, the parties appear

---

[9] In its Answer, Smith characterizes itself as a "broker engaged in arranging for the transportation of cargo in interstate commerce . . . ." ECF No. 20, at 1.

[10] Should Smith be found to be a carrier, Plaintiff's sole cause of action against Smith for the alleged loss would be through the Carmack Amendment, which Plaintiff has pleaded in Count I of its Complaint. ECF No. 1, at 6.

to disagree as to whether Plaintiff's state common-law claims are preempted by the Carmack Amendment and thus must be dismissed. Id.

As previously noted, district courts in other circuits have disagreed as to whether the Carmack Amendment preempts all state law claims made against brokers. Given the Fourth Circuit's indication in 5K Logistics that the Carmack Amendment does not preempt all state law claims against brokers, and in view of the "presumption that Congress does not intend to supplant state law . . . unless ([a federal statute indicates]) that [is] the clear and manifest purpose of Congress," the Court assumes without deciding that the Carmack Amendment does not preempt Count VI (nor does it preempt Count III) when directed against Smith in its capacity as a broker. New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654-655 (1995); see 5K Logistics, 659 F.3d at 338; see also Atlas Aero, 2013 U.S. Dist. LEXIS 58378, at *7-8 ("[T]he Court . . . follows the overwhelming majority of courts that have held that the [Carmack] Amendment does not preempt claims against brokers."). If Plaintiff's negligence claim were solely directed against Smith as a carrier, the Carmack Amendment would preempt such a claim consistent with well-established case law, and therefore the Court would not need to reach the alternative avenue of ICCTA preemption discussed below. See Nachman, 2018

15

U.S. Dist. LEXIS 149315, at *5-6 ("It is well-established that the Carmack Amendment completely preempts state law claims for damages to goods caused by an interstate carrier."). Accordingly, being unable to resolve whether Plaintiff is properly classified as a broker or carrier at this stage of the proceedings, the dispositive issue at the motion to dismiss stage is whether Plaintiff's negligence claim is preempted by the ICCTA when directed against Smith in its capacity as a broker, for a broker-directed negligence claim is the only type of claim that may evade preemption in light of the Carmack Amendment's preemptive force.

### c. ICCTA Preemption of Negligence Claims Against Brokers

In its motion to dismiss, Smith argues that Plaintiff's negligence claim — even when directed against Smith in its capacity as a broker — is preempted by the ICCTA and thus must be dismissed. ECF No. 23, at 7. Countering this argument, Plaintiff contends that the ICCTA's preemption provision does not apply because the instant negligence claim does not have anything more than a "tenuous, remote, or peripheral" connection to the "price, route, or service" of a broker, and therefore is not covered by 49 U.S.C. § 14501(c)(1). Mann v. C. H. Robinson Worldwide, Inc., No. 7:16-cv-00102, 2017 U.S. Dist. LEXIS 117503, at *22 (W.D. Va. July 27, 2017).

16

When addressing issues of statutory construction, the Court begins with the text of the provision at issue, which "necessarily contains the best evidence of Congress' pre-emptive intent." CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993). The ICCTA's express preemption provision prohibits state enforcement of a law, regulation, or other provision having the force and effect of law "related to a . . . service of any . . . broker . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). In the context of federal preemption, the United States Supreme Court interprets the language "related to" in a preemption provision as vested with a "broad pre-emptive purpose." Morales, 504 U.S. at 383. As a result, for a state law-based claim to be barred as preempted because it is "related to" the service of a broker, the claim in question need only have a "connection with, or reference to" the broker's services, and may still be preempted even if the claim's effect on a broker's service "is only indirect." Rowe v. New Hampshire Motor Transp. Assn., 552 U.S. 364, 370-71 (2008).

In addition to consulting these principles of statutory interpretation, the Court has surveyed relevant authorities interpreting 49 U.S.C. § 14501(c)(1) and finds the Seventh Circuit's opinion in Ye v. GlobalTranz Enterprises, Inc. particularly instructive for resolution of the instant dispute. 74 F.4th 453, 460 (7th Cir. 2023). In Ye, the Seventh Circuit

17

concluded that a personal-injury-based negligent hiring claim against a broker was preempted by 49 U.S.C. § 14501(c)(1) because the claim "would have a significant economic effect on broker services." Id. at 459. In the Seventh Circuit's view, negligent hiring claims strike "at the core of [the] broker['s] services by challenging the adequacy of care the company took — or failed to take — in hiring [the carrier]." Id. Because subjecting a broker's hiring decisions to a common-law negligence standard would occasion this significant economic effect, the Ye court concluded that negligent hiring claims — including those based on personal injuries caused by a carrier — are expressly preempted by the text of 49 U.S.C. § 14501(c)(1). Id. at 460.

With that background in mind, the Court turns to Plaintiff's position, which relies on reasoning outlined in Milne v. Move Freight Trucking, LLC, No. 7:23cv432, 2024 U.S. Dist. LEXIS 29439, at *20 (W.D. Va. Feb. 20, 2024). Milne observes that while the "Fourth Circuit has not opined on this issue . . . district courts therein have found that § 14501(c)(1) does not preempt state law negligence claims against brokers." Id. Though this statement makes broad reference to "negligence claims," Milne supports such statement by citing to district courts across the Fourth Circuit that have concluded that "negligence claims against brokers based on personal injuries are outside the scope of the preemption provision or shielded by the

18

safety exclusion."[11]   Id. (emphasis added); see Ortiz v. Ben
Strong Trucking, Inc., 624 F. Supp. 3d 567, 583-84 (D. Md. 2022)
(finding that "a personal injury suit for negligent hiring is not
an attempt to regulate the services of a freight broker" and thus
is not preempted).  Accordingly, contrary to Ye, several district
courts in the Fourth Circuit have found that such negligent
hiring claims, when brought to impose liability for an automobile
accident, do not have anything more than a "tenuous, remote, or
peripheral connection to the price, route, or service of a
broker," and thus do not attempt to regulate a broker's service
in a manner that would trigger preemption.  Mann, 2017 U.S. Dist.
LEXIS 117503, at *7.   Under this view, personal-injury-based
negligent hiring claims are better understood as "an attempt by
members of the driving public to recover for a broker's alleged
negligence in selecting an unsafe motor carrier," id. at 23, and
vindication of the public's interest in safe driving through such
negligence claims does not "have a significant impact related to
Congress' deregulatory and pre-emption-related objectives," and
thus is not preempted by the ICCTA.   Id.

Irrespective of the conflicting conclusions reached by the
Seventh Circuit in Ye and the preceding district courts,
Plaintiff's instant negligence claim against Smith is wholly

---

[11] The safety exclusion is an independent exception applicable in certain
circumstances when preemption would otherwise apply, and its potential
applicability to the instant case is addressed below.

unrelated to personal injury and thus cannot appreciably benefit from the reasoning in the Mann-Milne line of district court holdings.[12]   Rather, Plaintiff's Count VI seeks to recover pecuniary losses associated with the alleged damage done to the Batteries while stored in a warehouse, a circumstance far removed from the automobile accidents that gave rise to the negligent hiring claims in Mann and Milne.[13]  Mann, 2017 U.S. Dist. LEXIS 117503, at *7; Milne, 2024 U.S. Dist. LEXIS 29439, at *20.  As a result, Plaintiff's negligent hiring claim cannot reasonably be construed as enforcing safe driving practices like the personal-injury-based negligent hiring claims found not to be preempted in Mann and Milne.  Id.

Untethered to any personal injury, Plaintiff's negligent hiring claim comfortably falls within the terms of the ICCTA's preemption provision.  Plaintiff's negligence Count charges that "Smith breached its duty of reasonable care by negligently entrusting ([the Batteries]) . . . to DNK and Trinity for storage at the Warehouse."  ECF No. 1, at 9.  When analyzed through the

---

[12] Mann was decided before the Seventh Circuit published its opinion in Ye, 74 F.4th at 460, which, as noted above, concluded that 49 U.S.C. § 14501(c)(1) does preempt personal-injury-based negligent hiring claims against brokers.  Accordingly, the district court in Mann did not have the benefit of considering the analysis articulated in Ye.  See Mann, 2017 U.S. Dist. LEXIS 117503, at *7.

[13] Plaintiff's negligent hiring claim alleges that Smith "owed a duty of reasonable care in the transportation of the Batteries, which it breached by negligently hiring DNK to store the Batteries . . . ."  ECF No. 1, at 9.

framework articulated in Ye, Plaintiff's negligent hiring claim clearly challenges the adequacy of Smith's selection of DNK and Trinity to store and transport the Batteries, and thereby triggers ICCTA preemption because it tests "[the broker's] services by challenging the adequacy of care the company took . . . in hiring [a carrier] to provide shipping services." Ye, 74 F.4th at 459. Unpacking this reasoning, the ICCTA preempts state law claims that are "related to a . . . service of any . . . broker . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). Because a broker's core service is the selection of a suitable motor carrier to transport property, Plaintiff's negligent hiring claim is "related to" Smith's brokerage service, burdening Smith's carrier-selection function by impermissibly subjecting that decision to a common law negligence standard.[14] Id.; Ye, 74 F.4th at 459; see Vitek v. Freightquote.com, Inc., No. JKB-20-274, 2020 U.S. Dist. LEXIS 73544, at *10 (D. Md. Apr. 27, 2020) (observing that in "the negligent hiring context . . . the imposition of liability risks a pseudo-regulatory effect by reshap[ing] the level of service a broker must provide in selecting a motor carrier.") (cleaned up);

---

[14] A "broker" is defined by statute as "a person, other than a motor carrier . . . that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2); see also 49 C.F.R. § 371.2 (defining "brokerage service" as "the arranging of transportation.").

see also Miller v. C.H. Robinson Worldwide, Inc., 976 F.3d 1016, 1027 (9th Cir. 2020) (holding that the negligent hiring claim against a broker was expressly preempted by 49 U.S.C. § 14501(c)(1) but, because the claim was based on personal injury, the claim was saved by the statute's safety exception). Therefore, on these facts, Plaintiff's negligence claim is preempted by the ICCTA. 49 U.S.C. § 14501(c)(1). Despite this preemption finding, the Court addresses below whether the ICCTA's safety exception from preemption, § 14501(c)(2)(A), spares Count VI from dismissal.

### d. ICCTA's Safety Exception from Preemption

Plaintiff separately argues that, even if its negligence claim is preempted by the terms of § 14501(c)(1), the claim is excluded from preemption by the "safety exception" in the ICCTA. 49 U.S.C. § 14501(c)(2)(A); ECF No. 26, at 8. This safety exception excludes certain state law-based claims from preemption by limiting the scope of the ICCTA's preemption provision, which "shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo . . . ." 49 U.S.C. § 14501(c)(2)(A).

After reviewing the parties' arguments and relevant authorities, the Court concludes that Plaintiff's negligence

claim is not excepted from preemption — Plaintiff's claim does not fall within the exception's terms preserving the "safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A). To understand why Plaintiff's claim does not qualify for protection under § 14501(c)(2)(A), it is helpful to review other federal courts' rulings on closely related issues. To that end, the Seventh Circuit in Ye and the Ninth Circuit in Miller have disagreed as to the scope of the safety exception. Compare Ye, 74 F.4th at 464 (Section "14501(c)(2)(A) requires state laws to have a direct link to motor vehicles to be saved from the preemption provision in § 14501(c)(1). We thus conclude that [the plaintiff's] negligent hiring claim against [the Defendant] does not fall within the scope of § 14501(c)(2)'s safety exception.") with Miller, 976 F.3d at 1030 (finding that § 14501(c)(2)(A) does save state law-based negligent hiring claims premised on motor vehicle accidents).

Notwithstanding this disagreement as to the breadth of the safety exclusion, Plaintiff's negligence claim cannot be saved from preemption by § 14501(c)(2)(A) under either of the approaches taken by the foregoing appellate courts. In both Ye and Miller, the reviewing courts analyzed whether broker-directed negligent hiring claims that arose out of motor vehicle accidents were exempted from preemption by § 14501(c)(2)(A). Ye, of

course, is unavailing to Plaintiff because the Seventh Circuit found that the safety exception did not exempt such claims from preemption.   Though Miller reached the opposite conclusion, it found that such claims were saved from preemption because "they arise out of motor vehicle accidents, ([and]) have the requisite 'connection with' motor vehicles" as is required by the text of 49 U.S.C. § 14501(c)(2)(A).   Miller, 976 F.3d at 1030. Importantly, the Ninth Circuit determined that negligence claims that arise out of motor vehicle accidents "promote safety on the road" consistent with the text of the safety exception, which preserves the "safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A) (emphasis added); Miller, 976 F.3d at 1030.

Plaintiff's property damage claim cannot benefit from the Ninth Circuit's above-described reasoning.   Plaintiff's negligence claim is predicated on the allegedly negligent storage of the Batteries in a dilapidated warehouse, an issue completely unrelated to the "safety regulatory authority of a state with respect to motor vehicles," and therefore not excluded from preemption. 49 U.S.C. § 14501(c)(2)(A).   Indeed, the damage to the Batteries allegedly occurred when the property was stationary — the Batteries were not loaded on, nor struck by, a vehicle of any kind when they supposedly suffered "physical and wetness damage." ECF No. 1, at 5.   As a result, Plaintiff's negligence

24

claim cannot evade preemption as part of a state's residual authority to impose motor-vehicle-related safety regulations.

### e. ICCTA's Hazardous Cargo Exception from Preemption

Plaintiff advances one final argument in support of its position that the safety exception protects its negligence claim from preemption. Plaintiff contends that its negligence claim is premised on the "alleged acts of entrustment of a dangerous cargo," and therefore is excluded from preemption by the safety exception's text preserving "the authority of a State to impose . . . limitations based on the . . . hazardous nature of the cargo."[15] 49 U.S.C. § 14501(c)(2)(A); ECF No. 26, at 10. But Plaintiff fails to cite a single case where § 14501(c)(2)(A) was found to protect a negligence claim from preemption because such claim sought recovery for damage done to hazardous cargo. ECF No. 26, at 10. And Plaintiff has not persuaded the Court that its negligence claim would qualify as a "limitation[] based on the . . . hazardous nature of the cargo." 49 U.S.C. § 14501(c)(2)(A). The text of § 14501(c)(2)(A) more naturally reads as authorizing state laws that expressly regulate certain types of cargo because of its "hazardous nature." Id.; see Ass'n of Am. R.R. v. S. Coast Air Quality Mgmt. Dist., 622 F.3d 1094, 1097 (9th Cir. 2010) (observing "that [the] ICCTA likely would

---

[15] For the purposes of resolving the instant motion to dismiss, the Court assumes without deciding that lithium-ion batteries are "hazardous cargo" within the meaning of § 14501(c)(2)(A). ECF No. 26, at 10.

not preempt local laws that prohibit the dumping of harmful substances or wastes . . . ."); *see also* Whitten v. Vehicle Removal Corp., 56 S.W.3d 293, 306 (Tex. App. Dallas 2001) (describing the "hazardous nature" clause of 49 U.S.C. § 14501(c)(2)(A) as excepting "highway route controls pertaining to hazardous cargo and the weight and height of the motor vehicle" from preemption). Plaintiff's broker-directed negligent hiring claim against Smith, who hired another party to handle the allegedly hazardous cargo, is too far removed from the exception's text to justify Plaintiff's position, especially where it appears that the "hazardous" quality of the Batteries is incidental to Plaintiff's negligence claim.[16]

In summary, because Plaintiff's negligence claim — even when directed at Smith in its capacity as a broker — falls within the ICCTA's preemption provision, and because the claim is not excepted from preemption by § 14501(c)(2)(A), the Court **GRANTS** Smith's Motion to Dismiss as to "Count VI (Negligence – Smith)" of Plaintiff's Complaint.

---

[16] Plaintiff's argument on the applicability of the "hazardous cargo" portion of the safety exception is further undermined by the omission of the term "brokers" from the safety exception's text, an omission that the Seventh Circuit found telling. *See* Ye, 74 F.4th 453 at 461; *see also* Mays v. Uber Freight, LLC, No. 5:23-cv-00073, 2024 U.S. Dist. LEXIS 15434, at *10 (W.D.N.C. Jan. 27, 2024) ("[T]he statutory preemption provision applicable to brokers does not have a safety exception.").

26

## 2. Count III - Bailment

In addition to pleading a negligence claim against Smith, Plaintiff alleges in Count III that Smith breached its bailment duties, which purportedly included exercising "reasonable care as bailee for hire in receiving, handling, and storage of goods while in the DNK's [sic] and Trinity's exclusive, lawful possession." ECF No. 1, at 7. Smith contends that Plaintiff's bailment claim must be dismissed as a state law claim preempted by the Carmack Amendment and/or the ICCTA. ECF No. 23, at 3, 8. In response, Plaintiff maintains that the ICCTA does not preempt a contract-based bailment claim directed against Smith in its capacity as a broker, and even if the claim did qualify for preemption, Plaintiff argues that the ICCTA's safety exception preserves the bailment claim from preemption.[17] ECF No. 26, at 9-11.

Plaintiff has invoked this Court's diversity jurisdiction, conferred under 28 U.S.C. § 1332, and thus Virginia law establishes the elements required for a bailment claim. See Erie R. Co. v. Tompkins, 304 U.S. 64, 80 (1938). Under Virginia law, bailment is defined as the "the rightful possession of goods by one who is not the owner." K-B Corp. v. Gallagher, 218 Va. 381,

---

[17] District courts have frequently held that bailment claims sounding in tort law are clearly preempted by the ICCTA. See Ameriswiss Tech., 888 F. Supp. 2d at 207-208; see Siaci Saint Honore, 2022 U.S. Dist. LEXIS 207436, at *11.

384, 237 S.E.2d 183, 185 (1977). Accordingly, it is "the element of lawful possession, however created, and duty to account for the thing as the property of another that creates the bailment, regardless of whether or not such possession is based on contract in the ordinary sense." Id. (quoting Crandall v. Woodard, 206 Va. 321, 327, 143 S.E.2d 923, 927 (1965)). A plaintiff/bailor may bring a tort cause of action based upon the alleged negligence of the defendant/bailee, or the plaintiff/bailor may bring a contract action based upon the bailee's alleged breach of a bailment contract. Volvo White Truck Corp. v. Vineyard, 239 Va. 87, 92, 387 S.E.2d 763, 766 (1990).

### a. Contract-based Bailment Claim

Considering first Plaintiff's argument that its bailment claim survives preemption because it is contract-based, it is far from clear that Count III is a contract-based bailment claim as opposed to a claim sounding in negligence principles from tort law. In Volvo White, the Virginia Supreme Court briefly explained the difference between contract-based bailment claims and those sounding in negligence, defining contract-based bailment claims as "not construed as predicated upon the bailee's failure to exercise due care . . . ." Volvo White, 239 Va. at 92, S.E.2d at 766 (emphasis added). But in Count III, Plaintiff alleges that "Smith owed a duty of reasonable care as bailee for hire in receiving, handling, and storage of goods," and fails to

make any reference to any contract provision involving bailment duties.  ECF No. 1, at 7 (emphasis added); <u>see</u> <u>Duncan v. Cent.</u> <u>Loan Admin. & Reporting</u>, No. 2:20cv2543, 2020 U.S. Dist. LEXIS 184607, at *13 (D.S.C. Oct. 6, 2020) ("While a bailment may arise out of a contractual relationship, an action for breach of the duty of care by a bailee sounds in tort.") (cleaned up).   The Court therefore expresses doubt that Count III can be classified as a contract-based bailment claim, but will assume in Plaintiff's favor that Count III qualifies as such.

Even after accepting that Plaintiff's bailment claim is contract-based, the Court still finds that it is preempted by § 14501(c)(1) of the ICCTA.  It is true that district courts have held that "routine breach of contract claims" against brokers involving contractually-created duties are not preempted by the ICCTA because such claims do not amount to a state's enactment or enforcement of its laws.  <u>AXA XL Ins. Co. UK Ltd. v. Exel Inc.</u>, No. 2:23-cv-21874, 2024 U.S. Dist. LEXIS 26431, at *6 (D.N.J. Feb. 15, 2024).  Indeed, such breach of contract claims enforce only the parties' "own, self-imposed undertakings" and thereby "simply hold[] parties to their agreements" independent of a state's writ.  <u>American Airlines, Inc. v. Wolens</u>, 513 U.S. 219, 228-29 (1995).  However, these same district courts have held that state common-law claims are preempted because such claims rely on state common law duties and thus amount to "State[] . . .

enact[ment] or enforce[ment] . . . [of an] other provision having the force and effect of law," triggering ICCTA preemption.  <u>Id.</u> at 228-29; <u>see, e.g.</u>, <u>Alpine Fresh, Inc. v. Jala Trucking Corp.</u>, 181 F. Supp. 3d 250, 257 (D.N.J. 2016) ("State common law qualifies as an other provision having the force and effect of law.") (internal quotation marks omitted); <u>see also</u> <u>Frey v.</u> <u>Bekins Van Lines, Inc.</u>, 802 F. Supp. 2d 438, 442 (E.D.N.Y. 2011) (finding that the ICCTA preempted all of the plaintiff's non-contractual state law statutory and tort claims but noting that routine breach of contract claims were not preempted).

Here, Plaintiff's bailment claim fails to allege the breach of any contract terms, and instead closely tracks the type of bailment claims that have been dismissed by various district courts as preempted by the ICCTA.  <u>See, e.g.</u>, <u>Siaci Saint Honore</u>, No. 21-cv-03909, 2022 U.S. Dist. LEXIS 207436, at *11 (holding that a bailment claim alleging that a defendant's "failure to . . . return possession, care, custody . . . [was] a violation of its duties and obligations as bailee" was preempted by the ICCTA/FAAAA because it is a state law-based claim); <u>see also</u> <u>Ameriswiss</u>, 888 F. Supp. 2d at 202 (concluding that a bailment claim asserting that defendants "breached their duties and obligations to return the goods in an undamaged condition" was "expressly preempted by 49 U.S.C. § 14501(c)(1).").  Therefore, Plaintiff's bailment claim, even if contract-based as Plaintiff

contends, is a far cry from a "routine" breach of contract claim involving private, contractually-created duties and promises detached from state common-law created duties and principles.

In addition to the considerable number of district courts that have found bailment claims to be preempted by the ICCTA, the Fourth Circuit in Smith v. Comair, Inc. provided guidance on a closely related issue that counsels in favor of finding preemption. 134 F.3d 254, 257 (4th Cir. 1998). The Comair court analyzed the Airline Deregulation Act's ("ADA") nearly identical preemption provision, and observed that while the United States Supreme Court in American Airlines, Inc. v. Wolens had carved out an exception from ADA preemption for breach of contract claims, this breach-of-contract exception is narrow and designed to "enforce the parties' own, self-imposed undertakings." Comair, Inc., 134 F.3d at 257 (quoting Wolens, 513 U.S. at 233). To that end, the Fourth Circuit stressed that the exception from preemption is limited to "actions confined to the terms of the parties' bargain, 'with no enlargement or enhancement based on state laws or policies external to the agreement.'" Id. (quoting Wolens, 513 U.S. at 233).

Applying the principles recognized in Wolens and Comair, Plaintiff's bailment claim cannot reasonably be classified as a breach of contract claim "confined to the terms of the parties' bargain" because there is no reference in Count III to any

contract terms, and Count III, on its face, relies on the "external" state common-law of bailment duty for recovery.[18]   Id.; see Kent Sinclair, Sinclair on Virginia Remedies § 7-1 (noting that "[b]ailment is a common law relationship and resulting cause of action ([under Virginia law])"). Accordingly, Plaintiff's bailment claim falls within the ICCTA's preemption provision as a "state . . . provision[] having the force and effect of law related to a . . . service of any . . . broker." 49 U.S.C. § 14501(c)(1). Therefore, to avoid preemption, Plaintiff's bailment claim would have to find protection in the ICCTA's safety exception.

### b. ICCTA's Safety Exception from Preemption

Addressing the applicability of the safety exception to its bailment claim, Plaintiff appears to again argue that its bailment claim, which is dependent on state common-law created

---

[18] Plaintiff's citation to Cipollone v. Liggett Group, Inc., 505 U.S. 504, 526 (1992) fails to buttress its position that Count III should be excepted from preemption. Cipollone addressed the preemptive scope of the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. § 1334, a statute with a materially different preemption provision and a body of case law distinct from the ICCTA and Carmack preemption doctrine. More to the point, the Supreme Court's statement that "[a] common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a 'requirement . . . imposed under State law'" applied to a plaintiff's claim for a breach of an express warranty, a written warranty that held the defendant liable for a breach of its terms. Cipollone, 505 U.S. at 525-27. The Cipollone Court grounded this holding in the principle that a defendant's liability for a breach of express warranties derives from, and is measured by, the terms of the warranty, not state law. Id. This is consistent with Wolens, as liability for the breach of express warranty in Cipollone is "confined to the terms of the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." Wolens, 513 U.S. at 228.

duties, is excepted from preemption as a claim that falls within
"the authority of a State to impose . . . limitations based on
the . . . hazardous nature of the cargo." 49 U.S.C.
§ 14501(c)(2)(A); ECF No. 26, at 10. As previously noted,
Plaintiff fails to cite any authority for this proposition, and
the Court thus relies on its prior reasoning to reject
Plaintiff's novel argument that the safety exception's "hazardous
cargo" provision shields its bailment Count from preemption when
directed against a broker. In short, even if Plaintiff's
bailment claim is directed against Smith in its capacity as a
broker, the claim is preempted by the ICCTA and thus Smith's
motion to dismiss is **GRANTED** as to Count III. The Court next
addresses Defendant G Street's separate motion to dismiss Counts
V and VII of Plaintiff's Complaint.

### B. G Street's Motion to Dismiss

G Street, the alleged owner of the Warehouse where the
Batteries were damaged, contends that the Court should dismiss
Plaintiff's two counts — Bailment (Count V) and Negligence (Count
VII) — because Plaintiff has failed to adequately plead that G
Street owed a legal duty to Plaintiff as is required to state
such claims. ECF No. 22, at 2. The Court first addresses the
legal sufficiency of Plaintiff's bailment claim and then turns to
the negligence claim.

### 1. Count V - Bailment

In Count V of its Complaint, Plaintiff alleges that "G Street breached its bailment duty by failing to maintain the building in which the Batteries were stored." ECF No. 1, at 8. G Street seeks dismissal of Count V, arguing that Plaintiff fails to plead that G Street exercised "control" or "possession" over the Batteries as is required by Virginia law to state a bailment claim. ECF No. 22, at 8.

Under Virginia law, no formal contract is required to create a bailment, but "lawful possession . . . and a duty to account for the thing as the property of another" is necessary. York v. Jones, 717 F. Supp. 421, 425 (E.D. Va. 1989). Possession requires "physical control coupled with an intent to exercise control over the goods." Otto Wolff Handelsgesellschaft, mbH v. Sheridan Transp. Co., 800 F. Supp. 1359, 1366 (E.D. Va. 1992). To that end, the Virginia Supreme Court held that a plaintiff failed to state a bailment claim where a "defendant did not have exclusive possession over plaintiff's property at the time." K-B Corp. v. Gallagher, 218 Va. at 385, 237 S.E.2d at 186. Explaining its reasoning, the Gallagher court noted that "[the defendant's] control over the [property] as a whole was not independent and exclusive so as to charge [the] defendant with a duty of ordinary care to safeguard it." Id.

Applying Virginia bailment law to the instant case, Plaintiff has failed to adequately plead facts to support a bailment claim against G Street.  In its Complaint, Plaintiff states that "[a]t all relevant times, DNK and Trinity leased the Warehouse from G Street," and DNK and Trinity exercised "exclusive custody and control" over the Batteries.  ECF No. 1, at 5.  Nowhere in its Bailment Count does Plaintiff allege that G Street had lawful possession over the Batteries, which requires physical control coupled with an intent to exercise control over the goods.  Otto Wolff, 800 F. Supp. at 1366.  On the contrary, Plaintiff alleges in Count V that "G Street knew that DNK used the property as a warehouse and owed a duty of reasonable care as bailee for hire in providing a suitable building for the storage of goods, including such Batteries, while in DNK's and Trinity's exclusive, lawful possession."  ECF No. 1, at 8 (emphasis added). As a result, Plaintiff has not alleged that G Street ever exercised legal control over the Batteries, let alone allege that G Street exercised exclusive possession over Plaintiff's property as is generally required under Virginia law.  See K-B Corp. v. Gallagher, 218 Va. at 385, 237 S.E.2d at 186.

Responding to the preceding pleading deficiencies, Plaintiff concedes that while its Complaint "fails to articulate G Street's intent to exercise physical control over the Cargo," the Complaint does plead that G Street allowed the Batteries "into

its dilapidated warehouse from which the intent to exercise control should be inferred." ECF No. 27, at 2. Plaintiff does not cite any authority for the proposition that Virginia courts have inferred "intent to exercise control" in any comparable circumstances, and the Virginia Supreme Court's reasoning in Gallagher cuts against the acceptance of such a proposition. See K-B Corp. v. Gallagher, 218 Va. at 385, 237 S.E.2d at 186 (denying the existence of a bailment where the plaintiff's property was located on premises owned by the defendant because the defendant's control was "not independent and exclusive so as to charge defendant with a duty of ordinary care to safeguard [the property].").

Even assuming for the sake of argument that the Court could infer G Street's intent to exercise control over the Batteries by the mere fact of G Street's ownership of the Warehouse, Plaintiff still fails to plead any facts indicating that G Street had physical control over the Batteries, which is required for the element of possession that, in turn, is necessary to state a bailment claim. See Morris v. Hamilton, 225 Va. 372, 375, 302 S.E.2d 51, 53 (1983) ("[F]or an alleged bailee to have possession, he must have both physical control over the property and an intent to exercise that control."). Therefore, even after construing the well-pled facts in the Complaint in the light most favorable to Plaintiff, Count V is **DISMISSED** with prejudice for

failure to plead sufficient facts to state a claim for bailment against G Street.

### 2. Count VII - Negligence

In Count VII, Plaintiff alleges that G Street "owed a duty of care as to the property stored in its Warehouse" because Lotte was G Street's business invitee, and that G Street allegedly breached its duty by failing to maintain the Warehouse wall that collapsed and damaged the Batteries. ECF No. 1, at 10. Challenging this position, G Street argues that Count VII should be dismissed as Plaintiff has failed to adequately allege that G Street owed a legal duty to Lotte, a prerequisite for stating a negligence claim. ECF No. 29, at 9.

To state a claim for negligence under Virginia law, a plaintiff must allege a legal duty, a violation of that duty and resulting damage. Burdette v. Marks, 244 Va. 309, 311, 421 S.E.2d 419, 420 (1992) (cleaned up). Whether a legal duty in tort exists is "a pure question of law." Volpe v. City of Lexington, 281 Va. 630, 636, 708 S.E.2d 824, 827 (2011) (internal quotation marks omitted). Because the "finding of a legal duty is a prerequisite to a finding of negligence," the question of liability for negligence "cannot arise at all until it is established that the man who has been negligent owed some duty to the person who seeks to make him liable for his negligence." Tingler v. Graystone Homes, Inc., 298 Va. 63, 79, 834 S.E.2d 244,

253 (2019); Jeld-Wen, Inc. v. Gamble, 256 Va. 144, 149, 501 S.E.2d 393, 397 (1998).

In addition to these general precepts of negligence law, certain principles govern the duties owed by an owner of property to those on his land, a body of law known as "premises liability" that is a subset of broader negligence law. See Louis A. Lehr, Jr., 2 Premises Liability 3d § 36:1 (2016 ed.). When presented with a claim by a plaintiff injured on another's land, a reviewing court will determine whether a duty of care was owed to the injured party, and may assess the existence and extent of a duty by classifying the injured party as either a trespasser, licensee, or invitee of the property owner. Shoemaker v. Funkhouser, 299 Va. 471, 493, 856 S.E.2d 174, 186 (2021). As is relevant here, a business invitee is "[s]omeone who is invited or permitted to enter or remain on another's land for a purpose directly or indirectly connected with the landowner's or possessor's business dealings." Williams v. Wilson, 101 Va. Cir. 9, 16 (Norfolk, 2018) (quoting Business Visitor, Black's Law Dictionary (10th ed. 2014)); Frye v. Lunsford, No. 95-1769, 1996 U.S. App. LEXIS 25711, at *10 (4th Cir. 1996) ("Anyone who enters property for a purpose directly or indirectly connected with business dealings with the possessor of the land is a business invitee.") (cleaned up). The possessor of property owes an invitee a duty of ordinary care, which includes maintaining the

premises in a reasonably safe condition for the invitee's visit. Knight v. Moore, 179 Va. 139, 145-46, 18 S.E.2d 266, 269 (1942). Recovery from a landlord/owner for a breach of a duty to maintain the premises is available to both a tenant and a business invitee of a tenant.  See Oliver v. Cashin, 192 Va. 540, 543, 65 S.E.2d 571, 572-73 (1951).

Considering Plaintiff's negligence claim against this legal background, it appears from the parties' 12(b)(6) briefing that there is some uncertainty as to whether the instant negligence claim alleges ordinary negligence or sounds in premises liability.  See Kessler v. Visteon Corp., No. 04-2056, 2006 U.S. App. LEXIS 7944, at *12 (6th Cir. 2006) ("[I]t is clear that ordinary negligence and premises liability describe two distinct theories of negligence liability: one flows from actions ([ordinary negligence]), the other from possession."); see Spitz v. Occidental Dev., No. 351082, 2020 Mich. App. LEXIS 7844, at *7 (2020) (explaining that the "law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land.") (cleaned up).  In an ordinary negligence claim, a plaintiff's theory of the duty owed by a defendant flows from a defendant's conduct.  For example, a plaintiff may allege that he sought a defendant's assistance in moving property and that the defendant failed to exercise due care in moving the

39

property, resulting in an injury.    <u>Kessler</u>, No. 04-2056, 2006
U.S. App. LEXIS 7944, at *12.[19]

By contrast, in a premises liability claim, "liability
emanates from the defendant's duty as an owner, possessor, or
occupier of land."    <u>Id</u>.    The duty owed by a defendant in a
premises liability claim is thus "separate and distinct from any
duty that flows from conduct," and rather arises solely from
defendant's ownership of land.    <u>Id.</u>

Applying these principles to Plaintiff's negligence claim,
it is clear that Plaintiff has premised G Street's liability in
negligence law on G Street's duty as the owner of the property,
the Warehouse.    Plaintiff alleges that G Street, "<u>as the owner of
the Warehouse</u> . . . owed a duty of care as to the property stored
in its Warehouse."    ECF No. 1, at 10 (emphasis added).    Indeed,
Plaintiff alleges that "G Street breached its duty by failing to
maintain the building in which the Batteries were stored," an
allegation sounding in premises liability because premises
liability involves passive negligence, meaning the tortfeasor's
failure to do something to its property resulted in harm to the
injured party.    <u>See</u> 3 Florida Torts § 90.06 (Matthew Bender, Rev.
Ed.).    Because Plaintiff's negligence count here plainly relies

---

[19] In this example of an ordinary negligence claim, the defendant's <u>conduct</u>
provides the basis for the defendant's liability, and the defendant's duty
to the plaintiff is based on the defendant's obligation to conform to a
standard of care when engaged in the relevant conduct — moving the
plaintiff's property.    <u>See</u> <u>Synovus Bank v. Tracy</u>, 603 Fed. App'x 121, 124
(4th Cir. 2015).

on G Street's status as the owner of the Warehouse to impose liability — and does <u>not</u> rely on G Street's affirmative conduct to state a duty owed to Plaintiff while G Street engaged in said conduct — the claim sounds in premises liability law, and must be analyzed accordingly.[20]   This conclusion is strengthened by Plaintiff's invocation of concepts exclusively found in premises liability law such as "business invitees," ECF No. 1, at 10. <u>See</u> 1 Landau & Martin, Premises Liability Law and Practice § 1.05 (perm. ed., rev. vol. 2024).   The Court therefore proceeds to analyze Count VII as a premises liability claim.   <u>Id.</u>

It is undisputed that Plaintiff's premises claim relies on the duty owed by a property owner to invitees.[21]   ECF No. 27, at 7.   Accordingly, the parties' disagreement centers on whether Lotte, based on the facts pled in Plaintiff's Complaint, may be classified as a business invitee of G Street.   <u>See</u> ECF No. 29, at

---

[20] While ordinary negligence and premises liability are two distinct theories of negligence liability, a plaintiff is not precluded from also alleging an ordinary negligence claim based on a defendant's negligent conduct while on his own land.   <u>See</u> <u>Kessler</u>, No. 04-2056, 2006 U.S. App. LEXIS 7944, at *17.   But here, Plaintiff has not alleged a duty premised on G Street's failure to exercise due care in its affirmative conduct while in the Warehouse, and in fact never even alleges that a G Street representative was physically present in the Warehouse at the relevant time.   <u>See</u> ECF No. 1, at 10.

[21] In its brief opposing G Street's motion to dismiss, Plaintiff characterized its negligence count against G Street as follows: "the complaint states a cause of action for negligence against G Street for its failure to satisfy its common law duty to maintain the roof that collapsed . . . damaging the lithium ion batteries placed therein by Smith on behalf of Lotte <u>both business invitees</u> . . . G Street may be liable for negligently breaching a common law duty to <u>maintain the premises for invitees</u>."   ECF No. 27, at 7-8 (emphasis added).

9.   It appears that Plaintiff's characterization of Lotte as a business invitee is premised on the fact that Lotte's property, the Batteries, were stored in the G Street-owned Warehouse.   ECF No. 1, at 10.

As noted above, an invitee under Virginia law is "someone who is invited or permitted to enter or remain on another's land . . . ."   Williams, 101 Va. Cir. at 16 (emphasis added); see Richmond v. Grizzard, 205 Va. 298, 302, 136 S.E.2d 827, 830 (1964) ("[W]e have held one to be an invitee: (1) Where there is an express invitation to the visitor . . . ([or]) if the premises are thrown open to the public and the visitor enters pursuant to the purposes for which they are open.").   At odds with this definition, Plaintiff's Complaint states that Lotte's property, the Batteries, were stored in the Warehouse owned by G street while said Batteries were under the "exclusive custody and control" of Warehouse lessees DNK and Trinity.   ECF No. 1, at 5. Plaintiff has not pleaded any facts indicating that Lotte was either invited into the Warehouse by G Street or had a representative enter the premises consistent with the conventional definition of a business invitee under Virginia law, nor has Plaintiff provided any indication that Lotte ever communicated with G Street or DNK/Trinity.   Grizzard, 205 Va. at 302, 136 S.E.2d at 830; see Wright v. Webb, 234 Va. 527, 530, 362

.

42

S.E.2d 919, 920 (1987); see also M. Del., Note, <u>Invitee Status in</u> <u>Virginia</u>, 44 Va. L. Rev. 804, 810 (1958).

This mismatch between Plaintiff's definition of a business invitee and case law applications of the concept is all the more glaring when considering the doctrinal purpose of the invitee category. The legal category of invitee exists to classify the status of a person injured on someone else's land so as to determine the liability of the landowner. <u>Keen v. Wal-Mart</u> <u>Stores E., L.P.</u>, No. 22-60269, 2023 U.S. App. LEXIS 18515, at *4 (5th Cir. 2023); see <u>Bauer v. Harn</u>, 223 Va. 31, 36-37, 286 S.E.2d 192, 194 (1982). Because a business invitee "is <u>a person</u> who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land," that business invitee is owed a specific duty of care by the landowner since the person has been, in some fashion, encouraged by the owner to enter the property that must, in turn, be kept safe for the visit. <u>Second Restatement of Torts</u>, Liability of Possessors of Land to Persons on the Land, § 332 (emphasis added). This rationale for conferring a business invitee-based duty does not apply with the same force here, where there was no invitation to Lotte by G Street or DNK/Trinity, and thus no attendant duty of care owed to a visiting invitee. Therefore, Plaintiff's attempt to shoehorn Lotte and G Street's

43

attenuated relationship into a business invitee-based negligence claim is inapposite and unpersuasive.

Addressing the disjuncture between its Complaint and Virginia law's conception of a business invitee, Plaintiff cites a number of cases to support the proposition that the owner of property owes a duty of care to invitees. ECF No. 27. Importantly, none of these cases demonstrate how or why Lotte, a party that does not appear to have ever entered the premises, should be classified as a business invitee or enjoy the protections of such status. ECF No. 27, at 7. Plaintiff first cites Standard Oil Co. v. Wakefield, which does acknowledge "the duty of every man to so use his own property as not to injure the persons or property of others." 102 Va. 824, 828, 47 S.E. 830, 831 (1904). But Standard Oil acknowledged this duty in the context of the "well settled rule of the common law" that a person who authorizes the use of a dangerous instrument by another — where the authorizing person has reason to know that the dangerous instrument is likely to produce injury — may owe a duty to the subsequently injured person. Id. Accordingly, Standard Oil does not provide any support for Plaintiff's position that G Street owed Lotte a duty of care because Lotte was a business invitee of G Street's.[22] Plaintiff also cites

_____

[22] Similarly, Raylass Chain Stores, Inc. v. De Jarnette, 163 Va. 938, 943, 178 S.E. 34, 35 (1935), cited by Plaintiff, does not suggest that invitee

_Quisenberry v. Huntington Ingalls, Inc._, 296 Va. 233, 243, 818 S.E.2d 805, 810 (2018) for the proposition that a landlord's duty to keep a business invitee's property safe "does not depend on proving a particular relationship" between the landlord and the injured party. ECF No. 27, at 6.  However, the _Quisenberry_ Court provided that observation in the context of accidents where the parties were strangers at the time of an incident that caused personal injury to the plaintiff (such as in the context of a car accident).  _Quisenberry_, 296 Va. at 243-44, 818 S.E.2d at 810. And while _Quisenberry_ does acknowledge some principles of negligence law that could conceivably be availing to Plaintiff, Plaintiff's Rule 12(b)(6) briefing establishes that Count VII does not rely on these other principles but instead relies on Lotte's supposed status as G Street's business invitee to plead the requisite duty for its negligence claim.  Such a position is not addressed in nor buttressed by _Quisenberry_, as Plaintiff has plainly stretched the definition of business invitee beyond what

---

status can flow from property entering a premises.  And while _Love v. Schmidt_, 239 Va. 357, 360, 389 S.E.2d 707, 709 (1990), also cited by Plaintiff, does recognize that a landlord cannot delegate its common law duty to safely maintain its premises, there are two dipositive factual differences between _Love_ and the facts of the instant case.  First, and most importantly, _Love_ involved a personal injury to the plaintiff while she was physically present on the premises, _id._ at 360, whereas here, only property entered G Street's premises.  Second, the landlord in _Love_ leased only subparts of the premises and had an ongoing duty to maintain the "common spaces," _id._, whereas here, the allegations in Plaintiff's Complaint do not suggest that G Street leased only subparts of its warehouse and continued to operate/maintain "common spaces."  See ECF No. 1.

the concept can bear. Id.; see Sinclair & Friend, 1 Personal Injury Law In Virginia § 21.4 (2023).

At bottom, Plaintiff has not persuaded the Court that a landlord may plausibly owe a business-invitee-based duty to the owner of property under a tenant-lessee's exclusive custody and control when the owner of said property has not himself stepped foot on the landlord's premises, nor suffered any personal injury.[23] And the authorities surveyed by this Court further counsel against acceptance of Plaintiff's position.[24] The Court

---

[23] Plaintiff has also cited Oliver v. Cashin, 192 Va. 540, 544, 65 S.E.2d 571, 573 (1951) for the proposition that a landlord may owe a duty to a tenant, even when the tenant is in exclusive possession and control of the premises, when the landlord enters to make repairs. But Plaintiff has failed to plead any facts indicating that G Street entered the Warehouse to make repairs, and thus cannot benefit from the reasoning in Oliver. Id.; see ECF No. 1.

[24] To combat G Street's motion to dismiss, Plaintiff relies heavily on Weaver Mercantile Co. v. Thurmond, 68 W. Va. 530, 536-37, 70 S.E. 126, 129 (1911) where a defendant-owner was found liable when a tank supplying water to his hotel burst, causing water to flow off the defendant's property into the plaintiff's store. ECF No. 27, at 7. But Weaver is not a cure-all for Plaintiff's Complaint. First, West Virginia courts have read Weaver as a case that "dealt with maintaining a nuisance," Noone v. Price, 171 W.Va. 185, 191, 298 S.E.2d 218, 225 (1982) and have explained that the reasoning in Weaver is "based on the refusal to shift liability away from the entity that profits from the abnormally dangerous activity." Evans v. Mutual Mining, 199 W. Va. 526, 533, 485 S.E.2d 695, 702 (1997). Neither interpretation of Weaver appreciably supports Plaintiff's negligence claim, a claim that does not allege a nuisance nor an abnormally dangerous activity, nor any property damage to a neighbor as a result of the escape of such a dangerous activity or substance. See ECF No. 1. Moreover, for Weaver to lend support to Plaintiff's argument, the Court must first accept Plaintiff's "reasonable inference" that G Street did not surrender control of the entire Warehouse and therefore had a duty to maintain the "common spaces" retained under its control. ECF No. 27, at 7. But such an inference is unwarranted here, where Plaintiff's complaint fails to articulate any "common space" in the Warehouse under G Street's control. Rather, Plaintiff's Complaint indicates that G Street did surrender control of the entire Warehouse; Plaintiff has alleged that DNK and Trinity are under common ownership with a principal place of

here does not decide whether G Street owed Lotte any duty, but rather holds that Plaintiff's contention that G Street owed Lotte a duty based on Lotte's status as a business invitee of G Street is untenable. Given that Plaintiff has not presented an alternative basis for a duty owed by G Street to Lotte, Plaintiff's Complaint fails to state a claim for negligence against G Street. Therefore, G Street's motion to dismiss is **GRANTED** and Count VII is **DISMISSED without prejudice.**

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Smith's motion to dismiss Counts III (Bailment – Smith) and VI (Negligence – Smith) of Plaintiff's Complaint. ECF No. 19. Accordingly, the Court **DISMISSES with prejudice** Counts III and VI (Negligence – Smith).[25]

The Court **GRANTS** G Street's motion to dismiss Counts V and VII of Plaintiff's Complaint. ECF No. 21. Accordingly, the Court **DISMISSES with prejudice** Count V and **DISMISSES without prejudice** Count VII.

---

business located at 905 G Street, Hampton, VA, 23661, from which DNK/Trinity "operate[] the storage warehouse" with Trinity "handl[ing] logistical support for the Warehouse leased and operated by DNK." ECF No. 1, at 3.

[25] Plaintiff's Complaint contains two separate allegations under Count VI. The Court here dismisses only "Count VI – Negligence – Smith." See ECF No. 1, at 9.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ Mark S. Davis

_____
Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May  7  , 2024